## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

LEOTA MAY SMITH,          )
                                 )
              **Plaintiff,**       )
                                 )
vs.                             )     **Case No. CIV-07-957-M**
                                 )
MICHAEL J. ASTRUE,        )
Commissioner of Social       )
Security Administration,      )
                                 )
              **Defendant.**     )

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for disability insurance benefits. Pursuant to an order entered by United States District Judge Vicki Miles-LaGrange, the matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). The Commissioner has answered and filed the administrative record (hereinafter Tr.__). Both parties have briefed their respective positions, and the matter is now at issue. For the reasons stated below, it is recommended that the Commissioner's decision be reversed and that the case be remanded for further consideration consistent with this Report and Recommendation.

## I. PROCEDURAL HISTORY

The Social Security Administration initially found Plaintiff to be disabled as of October 1, 1989. Tr. 81-82. Plaintiff's disability was predicated on mental impairments including manic episodes, non-compliance with medication, suicidal tendencies, and a long

history of hospitalizations primarily relating to mental health issues.  Tr. 84.  Additionally, Plaintiff suffered from the abuse of prescription medication and heavy drinking.  Tr. 17, 84. In 1996, Congress passed the Contract with America Advancement Act which, among other things, included the following language: "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).  Thereafter, the Commissioner reopened this case and determined on December 19, 1996, that Plaintiff was no longer entitled to supplemental security income benefits effective January 1, 1997.  Tr. 596-98.  He further determined that Plaintiff would no longer be entitled to disability insurance benefits effective January 1, 1997.  Tr. 601-03.

Pursuant to Plaintiff's request, a hearing was held before an administrative law judge on August 11, 1997. Tr. 1058-1109 .  On June 3, 1998, the administrative law judge  issued a decision finding that Plaintiff was no longer disabled.  Tr. 11-13, 14-33. Plaintiff appealed the administrative law judge's decision to the Appeals Council, which declined to review the decision on April 13, 1999.  Tr. 7-8.  Thereafter, Plaintiff sought judicial review of the June 1998 decision in this Court.  Smith v. Barnhart, No. CIV-99-836-M.  On May 8, 2000, this Court granted the Commissioner's motion to remand for further proceedings in accordance with the provisions of sentence six of 42 U.S.C . § 405(g). [CIV-99-836-M, Doc. Nos. 24 and

32].[1]  Pursuant to the order of remand, the administrative law judge held a new hearing on August 31, 2000.  Tr. 1266-1305.  On October 26, 2001, the administrative law judge issued a decision again finding that Plaintiff was not entitled to disability insurance benefits after January 1, 1997.  Tr. 1115-1116, 1117- 1143.  Plaintiff did not seek review from the Appeals Council, and the October 2001 decision of the administrative law judge thus became the final decision of the Commissioner.

This Court then granted Plaintiff's motion to reopen the case in order to obtain judicial review of the October 2001 decision. [CIV-99-836-M, Doc. No. 33, 34].  Thereafter, on February 18, 2004, Magistrate Judge Valerie K. Couch recommended that the matter be reversed and remanded for further proceedings. [CIV-99-836-M, Doc. No. 58].   Judge Couch found that the administrative law judge had failed to demonstrate that she considered the combined effect of all of Plaintiff's impairments, performed an incomplete analysis of Plaintiff's  treating psychiatrist's opinion, and failed to clarify the job of "office custodial work," one of the jobs which the administrative law judge relied upon at step five of the sequential analysis.  [CIV-99-836-M, Doc. No. 58].  No objection was filed, and Judge Miles-LaGrange adopted the Report and Recommendation of Judge Couch on March 17, 2004. [CIV-99-836-M, Doc. No. 59].

Another administrative hearing was held on July 25, 2005.  Tr. 1457-1492.  On April 27, 2007, the administrative law judge issued another decision finding that Plaintiff was not

_____

[1]The Commissioner had moved for remand based on the vocational expert's misrepresentation of his credentials to the government. [CIV-99-836-M, Doc. No. 21].

entitled to disability insurance benefits.  Tr. 1305A-07, 1308-20.  Plaintiff did not seek

review from the Appeals Council, but filed the instant case for judicial review of the April

2007 decision.

## II.  STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review

as follows:

> We review the agency's decision to determine whether the factual findings are
> supported by substantial evidence in the record and whether the correct legal
> standards were applied. Substantial evidence is such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion.  However,
> a decision is not based on substantial evidence if it is overwhelmed by other
> evidence in the record or if there is a mere scintilla of evidence supporting it.
> The agency's failure to apply correct legal standards, or show us it has done
> so, is also grounds for reversal.  Finally, because our review is based on the
> record taken as a whole, we will meticulously examine the record in order to
> determine if the evidence supporting the agency's decision is substantial,
> taking into account whatever in the record fairly detracts from its weight.
> However, we may neither reweigh the evidence nor substitute our discretion
> for that of the Commissioner.

Hamlin v. Barnhart,  365 F.3d 1208, 1214 (10th Cir. 2004) (internal quotations and citations

omitted).  The Commissioner follows a five-step sequential evaluation process to determine

whether a claimant is disabled. Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988).

The claimant bears the burden of establishing a prima facie case of disability at steps one

through four. Id. at 751 & n. 2.  If the claimant successfully meets this burden, the burden

of proof shifts to the Commissioner at step five to show that the claimant retains sufficient

residual functional capacity to perform work in the national economy, given her age,

education, and work experience. Id. at 751.

## III. THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

In the most recent determination that Plaintiff is not disabled, the administrative law judge followed the sequential evaluation process set forth in 20 CFR. § 404.1520. Tr. 1310-11. She first found that Plaintiff had not performed substantial work activity since the date last insured, June 30, 1998. Tr. 1312. At step two, the administrative law judge found that through the date she last met insured status requirements, Plaintiff had severe impairments including seizure disorder, anemia, hypothyroidism, hypertension, arthritis, bipolar disorder, and a history of alcoholism. Tr. 1312. However, at step three, the administrative law judge found that Plaintiff's impairments did not meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 1312. At the fourth step of the sequential evaluation process, the administrative law judge found that Plaintiff had the residual functional capacity ("RFC") to lift and/or carry a maximum of 40 pounds, that she could perform work of five or six steps, and that she was unable to work with the general public. Tr. 1314. Based on this residual functional capacity, the administrative law judge determined that Plaintiff is not able to perform her past relevant work. Tr. 1318. At step five, the administrative law judge relied on the Medical-Vocational Guidelines as a framework, as well as the testimony of the vocational expert, to determine that a hypothetical person with Plaintiff's vocational factors and RFC could make a vocational adjustment to other work that exists in significant numbers in the economy. Tr. 1319-20. The vocational expert identified the following jobs: laundry bagger, office helper, bottling line attendant, and given Plaintiff's transferrable skills, file

clerk II.  Tr. 1320.   Accordingly, the administrative law judge found that Plaintiff was not disabled or entitled to benefits.  Tr. 1320.

## IV.  DISCUSSION

Plaintiff raises two issues on appeal.  First, she contends that the administrative law judge's  decision is again flawed because it does not consider the combined impact of all her impairments, in particular, consideration of organic brain damage.  Plaintiff's Opening Brief, p. 19-20.  Second, she claims that the administrative law judge again improperly disregarded the opinion of Plaintiff's treating psychiatrist, Dr. Dana Stull.  Id. at 21.

### A.  Consideration of Plaintiff's Medically Determinable Impairments

Plaintiff asserts that the administrative law judge erred in failing to consider the combined effect of all of her medically determinable impairments.  Plaintiff's Opening Brief, p. 19-20.  Specifically, Plaintiff contends that the administrative law judge once again failed to discuss the organic brain damage demonstrated by the medical record.  Id. at 20.

The Commissioner argues that the administrative law judge "provided a detailed discussion" of Plaintiff's seizure disorder, anemia, hypothyroidism, hypertension, arthritis, bipolar disorder, and history of alcoholism.  Commissioner's Brief, p. 3.  The Commissioner concedes that the administrative law judge did not consider "progressive organic brain deterioration," but argues that Plaintiff presented no evidence to support the diagnosis or related limitations.  Id.  The Commissioner also contends that Plaintiff has herein failed to cite to any part of the medical record evidencing this disorder.  Id.  The Commissioner claims that Plaintiff has waived this point on appeal on account of her failure to identify the

applicable portion of the record supporting her argument.  Finally, the Commissioner argues that even if the error is considered "other evidence related to the relevant time period indicated that Plaintiff had good functioning" and that Plaintiff has therefore failed to carry her burden of showing that her organic brain deterioration was a medically determinable impairment.  Id. at 4.

In reply, Plaintiff states that she did indeed cite to the part of the medical record evidencing organic brain damage, and repeats those citations.  Reply, p. 1-2.  She also notes that the Commissioner should be well aware of this record evidence as it was summarized in Judge Couch's Report and Recommendation. Id. at 2.  She further notes that Judge Couch's Report and Recommendation was adopted by Judge Miles-LaGrange without objection, yet the Commissioner has still failed to "obey this Court's plain command to consider all of Ms. Smith's impairments, including organic brain abnormalities." Id. Finally, she notes the Commissioner's claim that other evidence points to good functioning, but argues that "absent some valid reason specified in the hearing decision for disregard of these impairments, it was error for the Commissioner to not take them into account." Id. at 4.

Plaintiff correctly notes that an administrative law judge must consider the combined effect of all of her impairments.

> In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.  If the Commissioner of Social Security does find a medically severe combination of impairments, the

> *combined impact* of the impairments shall be considered *throughout the*
> *disability determination process.*

42 U.S.C. §§ 423(d)(2)(B) and 1382c(G). In addition, the social security regulations direct

the administrative law judge to:

> consider the combined effect of all of [the claimant's] impairments without
> regard to whether any such impairment, if considered separately, would be of
> sufficient severity.  If [the administrative law judge does] find a medically
> severe combination of impairments, the combined impact of the impairments
> will be considered throughout the disability determination process.  If [the
> administrative law judge does] not find that [the claimant has] a medically
> severe combination of impairments, [the administrative law judge] will
> determine that [the claimant is] not disabled.

20 C.F.R. § 404.1523; see also Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *5 (July 2,

1996) ("While a 'not severe' impairment(s) standing alone may not significantly limit an

individual's ability to do basic work activities, it may - when considered with limitations or

restrictions due to other impairments - be critical to the outcome of a claim.").

In considering this same claim upon judicial review of the October 2001 decision,

Judge Couch stated:

> Evidence in the record dating as early as 1987 confirms Plaintiff's assertion
> that she suffers from organic brain abnormalities.  In 1987, an MRI of
> Plaintiff's brain revealed scattered foci of increased signal in the white matter.
> Such a finding is indicative of demyelinating process, a process which can lead
> to dementia.  Tr. 271.  A 1996 MRI of Plaintiff's brain showed borderline
> cerebral atrophy, also suggestive of early abnormal white matter signal
> intensity.  The reporting physician stated that a diagnosis of small vessel
> disease could not be excluded.  Tr. 804.  Plaintiff was hospitalized in 1997
> after a sudden onset of ataxia, failure of muscular coordination, and abasia, the
> inability to walk.  Tr. 839.  An MRI taken during the subsequent
> hospitalization showed arteriosclerotic encephalopathy, a degenerative brain
> disorder related to the thickening and loss of elasticity of the blood vessels.
> Tr. 841.  Although a CT scan of the brain was within normal limits, an

electroencephalogram was abnormal in that it showed slowing activity consistent with possible seizure disorder. Id.  After a 1998 MRI, Plaintiff was diagnosed with diffuse cerebral and cerebellar atrophy present to a degree greater than that which would be  anticipated for a person of Plaintiff's age. Plaintiff was also diagnosed with severe small vessel ischemia, a deficiency of blood, in this case to the brain, caused by functional constriction or obstruction of the small blood vessels.  Tr. 988.

...

In this case, the [administrative law judge] noted the evidence of Plaintiff's cognitive decline and the results of at least one MRI. Tr. 1127.  The [administrative law judge] then summed up her conclusions regarding this and all other possible impairments by stating, "All other alleged impairments do not affect work-related activities to any greater degree than the above impairments." Tr. 1136.  This statement indicates that the [administrative law judge]  did not, in fact, consider the combined impact of all of Plaintiff's impairments.   The [administrative law judge] is charged with carefully considering all of the relevant evidence and linking findings to specific evidence.  Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir.1996) (holding "[t]he record must demonstrate that the [administrative law judge] considered all of the evidence," and, while the [administrative law judge] need not discuss every piece of evidence, the [administrative law judge]  must "discuss[ ] the evidence supporting his decision, . . . the uncontroverted evidence he chooses not to rely upon, [and] significantly probative evidence he rejects").  Here, the record does not demonstrate that the [administrative law judge] actually considered the combined impact of Plaintiff's impairments including the evidence of organic brain abnormalities.

Smith v. Barnhart, Case No. CIV-99-836-M, slip op. at 7-8 (W.D. Okla. Feb. 18, 2004)

(Couch, M.J.).

The record evidence of concern noted by Judge Couch was extensively addressed by

the administrative law judge in her questions to the medical expert at the hearing, and in light

of his testimony concluded that there was no evidence to support the existence of an organic

brain disorder. The portions of the decision relevant to this issue include:  (1) a statement at

step two that the administrative law judge "also considered all medical evidence of impairments, since the date that she last met the insured status requirements for disability insurance benefits, to determine if any subsequently-learned evidence impacted the claimant's impairments, as they existed before the date that she last met the insured status requirements for disability insurance benefits"; (2) in the context of considering Plaintiff's hypertension at step three, a finding that "claimant has no evidence of . . .organic brain damage"; and (3) in the context of her analysis of Plaintiff's reported subjective symptoms of seizures, a statement that Plaintiff's brain computer tomography was normal.  Tr. 1312, 1313, 1316.  However, as noted above, it is clear from the administrative hearing that the administrative law judge asked the medical expert to address those parts of the record relating to organic brain damage which had been noted by Judge Couch in her recommendation:

> [BY ADMINISTRATIVE LAW JUDGE]: Q.  Okay.  I'm going to get a little bit repetitive.  But I want to ask you about a few specifics.  There is a reference in 1987, which I know is before the date that Ms. Smith was found disabled in the past.  There is reference to an MRI in 1987, that referred to a scattered foci of increased signal in the white matter.
>
> [BY THE MEDICAL EXPERT]: A.  Oh, I must have missed that.  This, they, they stated in that that it was not due to multiple sclerosis. That it could be due to the alcohol or the  - - or small blood vessel changes.
>
> Q.  Right.  So my question about that is can you determine from the records whether Ms. Smith had an, an organic brain disorder as long ago as that, or whether or not if she had ceased drinking, that would have corrected the matter?
>
> A.  Well, this one thing is very sketchy to hang a diagnosis on.  You know, over 15 years ago.  I, I don't think that I would be able to, to pinpoint any

problem in 1987 in regard to this.  And of course, the thing is, that if you have seizures, they go away when you stop drinking.  But the other thing that you can have, you, you can have secondary to alcoholism, permanent brain changes.  That is possible.  But there isn't any evidence that, that we have that here.  She had that one study that as I recall was never repeated.

Q.  Okay.  Then there's - - there was also an MRI in 1996 that showed borderline cerebral atrophy.  And I don't know if it specific  - - I don't recall off the top of my head whether it specifically mentioned greater than expected for age or what.

A.  Well, that would be more than you'd expect for her age.  As, as we get older, we all have some degree of cerebral atrophy.  And it varies considerably from individual to individual as far as age is concerned.  Some people at the age of 80 have no evidence of it.  And other people in their fifties will have evidence of it.  If, if you have it at a young young, younger age than you would normally expect, you look for other reasons that this would occur.  Such as alcohol.

Q. Okay.

A. Or other drugs.

Q.  An then, then you, you made reference and I want to talk about it a little bit  more, to the one episode where the claimant was hospitalized, I think in 1997, due to ataxia?

A. Yes.

Q.  A, a sudden onset of ataxia and some type of lack of coordination or whatever.  And what happened there?

A.  It rapidly cleared and she was discharged.

Q. Okay.

A.  I don't, don't remember the exact details.  But it was within two or three days.  She - - there was no problem at all when she was discharged.  I'm not sure that they ever arrived at a diagnosis as to why she had the ataxia.

Q. Would an organic brain disorder, whether due to long term alcohol use or some other reason, cause a sudden episode of ataxia, that was clear that quickly?

A. No.

Q. Okay.

A. If it was due to something like that, it would occur, but it would not clear within a couple of days. I mean, if it clears within a couple of days, whatever the reason, it was some acute.

Q. Okay. It might get a little better or a little worse over time if it were truly organic.

A. Well, if, if you - - if it was due to some chronic things in the brain, even though it might have cleared or improved temporarily. Then it would, it would recur and we don't have any evidence that that happened.

Tr. 1468-1470. In summarizing the medical record, the medical expert also stated the

following at the hearing:

The, the the problem of a seizure disorder is questionable. On one EEG there was spiking activity that was compatible with seizure activity. Other EEG's, two or three, stated that this was perfectly – the EEG's were perfectly normal and did not show any evidence of, of this seizure diseases. The fact that she at one point stated that she was having a couple of seizures every day, this would be extremely unusual and I, I don't know how to evaluate that in the face of negative studies. Like I said, she could have seizures on an acute basis, due to alcohol or Lithium. If the seizure diagnosis is valid. And I think there's - - I would lean toward it, the other way. In the history, it was allegedly controlled by the treatment. But she is noncompliant with treatment with this according to her history, the given to various - - to physicians on at least a couple, a couple of times. So that I, I don't think that there is any disability or any listing as far as seizures are concerned.

Tr. 1467-68.

The administrative law judge stated that she had considered all evidence, whether or not it was specifically discussed. Tr. 1312. The administrative law judge specifically found that there was no evidence of organic brain damage. She did consider all of the non-severe impairments supported by the medical record – headache, kidney failure, aplastic anemia, and SLE – throughout the disability determination process.

The administrative law judge, with the help of the medical expert, considered all evidence relating to organic brain damage and found no impairment to exist. Thus, the administrative law judge did not err in failing to consider organic brain damage during the latest disability determination process. As noted by the Tenth Circuit Court of Appeals:

> Finally, plaintiff is correct that the [administrative law judge] must "consider the combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. The problem here, however, is that plaintiff has overlooked the threshold requirement that "[a] physical ... impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." Id., § 416.908. Because plaintiff's subjective claims regarding the physical limitations caused by her alleged hand problems are not supported by any objective medical evidence, the [administrative law judge] did not err in failing to consider her hand problems as an impairment, and he was not required to consider the alleged hand limitations in combination with plaintiff's back impairment. For the same reason the [administrative law judge] was not required to include the alleged hand limitations in the hypothetical question he posed to the vocational expert.

Baldwin v. Barnhart, No. 02-5117, 167 Fed.Appx. 49, 56, (10th Cir. Feb. 14, 2006).[2]

Accordingly, Plaintiff's first point of error is without merit.

---

[2]Unpublished disposition cited for persuasive value pursuant to Tenth Circuit Rule 32.1.

13

**B.  Administrative Law Judge's Treatment of the Opinion of Dr. Dana Stull**

Next, Plaintiff contends that the administrative law judge improperly rejected the opinion of Dr. Dana Stull, Plaintiff's treating psychiatrist.  Plaintiff's Opening Brief, p. 21. Specifically, that she failed to give good reasons in the decision for the weight assigned to Dr. Stull's opinion, and was not specific enough to make clear the weight assigned to her opinion.  Id. at 23.

The Commissioner claims that the administrative law judge correctly weighed and offered supported reasons for discounting Dr. Stull's opinion.  He also claims that in making her argument, Plaintiff has omitted some of the supported reasons the administrative law judge gave for discounting Dr. Stull's statements.

In the decision, the administrative law judge made the following statement regarding Dr. Stull's opinion:

> The claimant went to North Care.  Most of her visits were with a licensed professional counselor, and not with the psychiatrist.  Dr. Stull's assessment, from about a year after the claimant last met insured status requirements for disability insurance benefits, showed the claimant with poor, "marked," or extreme limitations in all areas.  This degree of impairments would require hospitalization at times.  Further, Dr. Stull noted that the claimant was not compliant with medications, but did better when she did comply with medications.  These conclusions are not consistent with the claimant's attendance at school and acquiring her college degree.  Furthermore, it appears that Dr. Stull's statement was for the express purpose of supporting the claimant's appeal.  His notes indicated that he delayed completing the form until he had instructions to complete it.

Tr. 1317-18 (emphasis in original).  The administrative law judge found Plaintiff to have mild restrictions in her activities of daily living; moderate difficulty maintaining social

14

functioning;  moderate difficulties maintaining concentration, persistence and pace; and no

episodes of decompensation.  Tr. 1314. The only non-exertional limitations included in the

administrative law judge's residual functional capacity assessment were that Plaintiff could

do work of five to six steps and could not work with the general public.  Id.

On the other hand, Dr. Stull found marked limitations in Plaintiff's ability to follow

work rules; relate to co-workers; deal with the public; interact with supervisors; understand,

remember, and carry out simple job instructions; maintain acceptable personal appearance;

and behave in an emotionally stable manner.  Tr. 1257-58. Dr. Stull found Plaintiff's

limitations to be extreme with regard to her ability to use judgment; deal with work stresses;

function independently; maintain attention/concentration; understand, remember, and carry

out both detailed and complex work instructions; behave predictably in social situations; and

demonstrate reliability. Tr. 1257-59.   Dr. Stull noted:

> Leota Smith's judgment is impaired by her primary psychiatric illness and by
> the medications she takes for it.  She has been too unstable to comply with a
> work schedule; this would be extremely difficult and stressful for Leota.  An
> increase in perceived stress will likely lead to further decompensation.  Leota
> is unable to work independently because of her inability to prioritize & use
> good judgment.

Tr. 1258.  Dr. Stull related the following medical and clinical findings supporting her

assessment: "As stated above, Leota had difficulty [with] cognition [secondary] to her

primary diagnosis & medications for it." Id. She includes an additional comment that "Leota

Smith has bipolar disorder & a seizure disorder which have been refractory for effective

treatment.  Her prognosis is guarded at best."  Id. at 1259.

The Tenth Circuit Court of Appeals has made it clear that an administrative law judge's failure to delineate his findings regarding the weight given to medical opinions from treating sources is grounds for remand because, without these findings, the decision cannot be properly reviewed. See Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir 2003); Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004) (because the administrative law judge failed to *explain or identify* claimed inconsistencies, reasons for rejecting that opinion are not "sufficiently specific" to enable meaningful review). "In deciding how much weight to give a treating source opinion, an [administrative law judge] must first determine whether the opinion qualifies for 'controlling weight.'" Watkins, 350 F.3d at 1300.

> An [administrative law judge] must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." If the answer to this question is "no," then the inquiry at this stage is complete. If the [administrative law judge] finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight. The agency ruling contemplates that the [administrative law judge] will make a finding as to whether a treating source opinion is entitled to controlling weight. In this case, the [administrative law judge] obviously did not give [the treating physician's] opinion controlling weight, but he did not articulate a reason. A finding at this stage (as to whether the opinion is either unsupported or inconsistent with other substantial evidence) is necessary so that we can properly review the [administrative law judge's] determination on appeal.

Id. (citations omitted) (citing Social Security Ruling 96-2p, 1996 WL 374188, at *2). "In choosing to reject the treating physician's assessment, an [administrative law judge] may not make speculative inferences from medical reports *and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or*

*her own credibility judgments, speculation or lay opinion*." <u>McGoffin v. Barnhart</u>, 288 F.3d

1248, 1252 (10th Cir. 2002) (quotations omitted) (emphasis added).   In this case it appears

that the opinion of Dr. Stull was given no weight, given the administrative law judge's

overwhelmingly inconsistent finding.  <u>Compare</u> Tr. 1314 <u>with</u> Tr. 1257-1259.

Even if some weight was given to the opinion of Dr. Stull, the administrative law

judge must articulate the weight assigned.  <u>Watkins</u>, 350 F.3d at 1300.   Moreover, the

administrative law judge must supply "good reasons" for the weight ultimately given to the

treating doctor's opinion.  <u>Id.</u> at 1301 (citing 20 C.F.R. § 404.1527(d)(2)).   Because in

<u>Watkins</u>, the administrative law judge failed to articulate the weight given to the treating

doctor's opinion remand was necessary.  The Court explained:

> Here, the [administrative law judge] failed to articulate the weight, if
> any, he gave [the treating physician's] opinion, and he failed also to explain
> the reasons for assigning that weight or for rejecting the opinion altogether.
> We cannot simply presume the [administrative law judge] applied the correct
> legal standards in considering [the treating physician's] opinion.  We must
> remand because we cannot meaningfully review the [administrative law
> judge's] determination absent findings explaining the weight assigned to the
> treating physician's opinion.

<u>Id.</u> (citing <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1214 (10th Cir. 2001)); <u>Langley</u>, 373 F.3d

at 1119 (even if  treating physician's opinion is not entitled to controlling weight, treating

source medical opinions are still entitled to deference and must be weighed using all of the

factors provided in 20 C.F.R. § 404.1527);  Social Security Ruling 96-2p, 1996 WL 374188,

at *4.

In Langley, the Tenth Circuit remanded the case because, contrary to the requirements of Social Security Ruling 96-2p, the administrative law judge completely rejected the treating physician's opinion once he determined it was not entitled to controlling weight, without any consideration of what lesser weight the opinion should be given or discussion of the relevant factors set forth in 20 C.F.R. § 404.1527.  Langley, 373 F.3d at 1120.  Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the administrative law judge's attention which tend to support or contradict the opinion.  20 C.F.R. § 404.1527.

In reviewing the decision of the administrative law judge, it is obvious that it does not contain any explicit findings regarding whether the opinion of  Dr. Stull should be given controlling weight, and if not, what weight was assigned in light of the Langley factors.  The reasons given by the administrative law judge for the unarticulated weight she assigned to the opinion of Dr. Stull were (1) that most of Plaintiff's visits were with a counselor rather than Dr. Stull; (2) attendance at college and acquisition of a degree; (3) that marked and extreme work-related limitations would require hospitalization "at times";  and (4) that Plaintiff was non-compliant with medications and did better when she did comply. If these reasons were given in support of the administrative law judge's decision to completely reject

18

Dr. Stull's opinion they are clearly insufficient. In <u>McGoffin</u>, 288 F.3d at 1252, the Court held that an administrative law judge may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not on the basis of the administrative law judge's own credibility judgments, speculation or lay opinion.

The administrative law judge noted initially that most of Plaintiff's visits were with a licensed professional counselor rather than Dr. Stull.  However, she fails to explain how this fact detracts from the weight of Dr. Stull's opinion.  Although <u>Langley</u> does require consideration of frequency of the treating physician's examinations, simply noting the fact that Plaintiff saw another member of her treatment team more than Dr. Stull does not necessarily imply that the number of Dr. Stull's examinations were too infrequent to allow proper assessment of Plaintiff's limitations.  As stated in the regulation explaining the definition of treating physician:

> Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).

20 C.F.R. § 404.1502.  Thus, the Commissioner has recognized that the frequency of treatment is dependent on the condition at issue. The fact that Plaintiff's visits with her counselor were more frequent than her visits to Dr. Stull cannot be viewed as a reason to discount Dr. Stull's opinion unless the administrative law judge explains that Plaintiff's visits

to Dr. Stull were too infrequent in and of themselves to allow her to accurately opine as to Plaintiff's limitations.[3]

The administrative law judge also cited Plaintiff's attendance at college and acquisition of a degree as a reason to disregard Dr. Stull's opinion.  However, ability to participate in activities such as attending school, does not necessarily establish that a person is able to engage in substantial gainful activity, but such activities may be considered by the Commissioner, along with the medical evidence in determining whether a claimant is disabled.  Markham v. Califano, 601 F.2d 533, 534 (10th Cir. 1979).  However, the administrative law judge did not discuss the evidence in the record that Plaintiff's symptoms gave her difficulty with her school work, that it took her fifteen years to complete her degree, and that she had only attended classes about twice a week.  Tr. 818, 933, 1121.  There is also a neuropsychological evaluation – copied to Dr. Stull – which clearly refers to Plaintiff's achievement of a college education.  Tr. 1260-61.  Accordingly, it is presumed that Dr. Stull was aware of this when she prepared her evaluation a few months later.

The administrative law judge also speculated that marked and extreme difficulties in a work setting would have resulted in hospitalizations.  The administrative law judge does

---

[3]At least one court has noted that this scenario is common in the area of psychological impairments. Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003) ("A psychiatrist may therefore manage the provision of psychiatric medication, receiving reports from the medical sources providing "hands-on" treatment, without seeing the patient with any regularity").

not cite to any medical evidence supporting this opinion, and moreover, the medical record does contain notes of several hospitalizations.

Finally, the administrative law judge once again speculated that Dr. Stull's statement was for the "express purpose" of supporting Plaintiff's appeal.  Tr. 1318.   As Judge Couch noted in her previous Report and Recommendation, the statement in Dr. Stull's note of October 11, 1999,Tr. 1201,  that Plaintiff had provided a rating form but no instructions on how to complete it could not have been referring to Dr. Stull's June 1, 1999, evaluation. This allegedly post-dated note was attached to Plaintiff's complaint in her previous social security appeal filed on June 14, 1999.  Moreover, even if it were logically possible for Dr. Stull to be referring to her June 1, 1999 evaluation, the statement itself does not support the administrative law judge's speculation that the *outcome* of the evaluation was dictated by instructions provided by the Plaintiff – an equally plausible inference was that Dr. Stull needed administrative guidance.  See <u>Langley v. Barnhart</u>, 373 F.3d. 1116, 1121 (10th Cir. 2004) (an administrative law judge improperly rejected treating physician's opinion by his own speculative conclusion that the report was prepared as a "courtesy" to the claimant); <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1253 (10th Cir. 2002) (an administrative law judge's assertion that a family doctor naturally advocates his patient's cause is not good reason to reject the opinion).

In summary, the administrative law judge failed to expressly indicate the weight given to the opinion of Dr. Stull, a complete rejection of Dr. Stull's evaluation was not supported by medical evidence, and the assignment of some lesser weight is not supported by "good

reasons" which were specific enough to facilitate this Court's review.  For this reason, it is recommended that the matter be remanded for further administrative proceedings consistent with the legal requirements for the evaluation of Dr. Stull's opinion

.

### C.  Award of Benefits

Next, the undersigned considers Plaintiff's contention that if reversal is required, the case should be remanded for an award of benefits rather than additional administrative proceedings.  The district court has the discretion to order an immediate award of benefits. Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993). In determining whether the discretion should be exercised, the Court should consider "the length of time the matter has been pending and whether or not 'given the available evidence, remand for additional fact-finding would serve [any] useful purpose . . . ." Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006).  Although the Commissioner has already been given two opportunities to address Plaintiff's claim, and the factual record is obviously complete with regard to this now eleven-year-old claim, the proper evaluation of the opinion of Dr. Stull will be useful to the Commissioner's disposition of Plaintiff's claim and involves fact finding, which is appropriately left to the Commissioner.

Although the undersigned is sensitive to the fact that Plaintiff has waited eleven years for the final disposition of her application, it is expected that the Commissioner will promptly reopen and complete administrative proceedings.  Furthermore, the proper evaluation of Dr. Stull's opinion may affect the Commissioner's  residual functional capacity finding, which

in  turn could affect the outcome of this step-five determination.  Accordingly, it is recommended that this Court reverse the decision of the Commissioner and remand for additional administrative proceedings consistent with the analysis herein.

## **RECOMMENDATION**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the final decision of the Commissioner of Social Security Administration be reversed and remanded for additional administrative proceedings consistent with this Report and Recommendation. The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by December 2nd, 2008, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 12th day of November, 2008.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE